IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGEL MONTALVO-VELEZ,

    Plaintiff,

              v.

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.

**Civil No. 13-1827 (SEC)**

**OPINION AND ORDER**

Angel Montalvo-Vélez (Montalvo) brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's denial of his application for disability insurance benefits. Docket # 1. Montalvo filed a memorandum of law supporting his request, Docket # 15, and the Commissioner opposed. Docket # 18. After reviewing the filings and the applicable law, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**Factual and Procedural Background**

On May 24, 2011, Montalvo filed an application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 301 et seq., alleging a disability onset date of February 1, 2011. Administrative Transcript (Tr.) 511. Montalvo, who at that time was in his late thirties, claimed to be disabled from full-time employment because of back and neck pain, limping on the right leg, as well as depression and diabetes. Tr. 39-57.

The application for disability benefits was denied initially and again upon reconsideration. Tr. 454, 458. Montalvo then sought a hearing before an Administrative Law Judge (ALJ), Tr. 463, and a hearing was held in April 2013. Tr. 37-69. Montalvo, Lidia González (Montalvo's wife), and vocational expert (VE) Alina Kurtanick testified at the hearing. Tr. 38.

**Civil No. 13-1827 (SEC)**                                                                 **Page 2**

In a concise and well-reasoned decision, the ALJ concluded—at step five of the sequential evaluation process—that Montalvo was not disabled. Despite his limitations, the ALJ ultimately determined that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 31. The ALJ also considered Montalvo's medical records, including those from examining physicians Drs. Ana Mañana-Ferro (internist), Alfredo Pérez Canabal (neurologist), Ariel Rojas Davis (psychiatrist), and Maritza Ortiz Acosta (psychiatrist). The ALJ also heard testimony from the VE, who testified that Maldonado could work as a "[s]mall parts assembler . . . [t]icket checker . . . and another position like document preparer." Tr. 67.

The following excerpts from the ALJ's decision best illustrates her methodology and findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since February 11, 2011, the alleged outset date.

3.  The claimant has the following severe impairments: bilateral subacute chronic L5-S1 rediculitis of dorsal rami of spinal nerve, lumbar radiculopathy, disc bulging at L5-S1, cervical disc bulging C3-C4, C4-C5, disc herniations at C5-C6 and C6-C7, diabetes mellitus, and depression (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform sedentary work requiring lifting or carrying 10 pounds occasionally, sitting about 6 hours in an 8-hour workday, standing and/or walking about 2 hours in and 8-hour workday, with no limitations pushing or pulling with an ability for unskilled work that is simple, routine and repetitive with

**Civil No. 13-1827 (SEC)** Page 3

        occasional contact with coworkers and the public on a less than occasional basis.[1]

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on May 24, 1971 and was 39 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

8. The claimant has at least a high school education but is not able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability . . . from February 1, 2011, through the date of this decision.

Tr. 25-31 (citations and typeface omitted).

    Unsatisfied with the ALJ's determination, Montalvo appealed. But the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner and, therefore, subject to judicial review. Tr. at 1-9. This appeal followed. Docket # 1.

    On appeal, Montalvo argues that (1) the ALJ failed to properly articulate "good reasons" for not giving controlling weight to the opinions of Drs. Acosta and Mañana-Ferro; and (2) the ALJ provided the VE with an incorrect hypothetical. Docket # 15, p. 2. The Commissioner opposed all of Montalvo's contentions. Docket # 18.

---

[1] A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). The ALJ is responsible for deciding a claimant's RFC; and, in making that determination, the ALJ must consider all relevant medical evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). "[S]edentary work is defined as work that involves lifting no more than 10 pounds at a time, and is performed primarily while sitting, though walking and standing may be required occasionally."§ 404.1567 (a).

**Standard of Review**

The scope of appellate review is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (per curiam). To that end, §405(g) provides that the Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," 42 U.S.C. § 405(g), and in Richardson v. Perales, 402 U.S. 389 (1971), the Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401; Irlanda Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). Said differently, even if the record could justify a different conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. Evangelista v. Secretary of H.H.S., 826 F.2d 136, 144 (1st Cir. 1987). This is not to say, of course, that this deferential standard of judicial review amounts to rubber stamping the Commissioner's decision. For the ALJ's factual findings are <u>not</u> conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35 (citations omitted). But absent a legal or factual error in the evaluation of a claim, the Commissioner's denial of disability benefits stands. Seavey v. Barnhart, 276 F.3d 1, 15 (1st Cir. 2001).

**Applicable Law and Analysis**

Before addressing the propriety of the hypotheticals presented to the VE, the Court tackles an antecedent question: Whether the ALJ properly articulated the weight accorded to Drs. Acosta and Mañana-Ferro's opinions. That determination turns on the sufficiency and validity of the ALJ's explanations for rejecting some of the findings reached by these treating doctors.

*Treating Source Opinions*

"Under the relevant regulation," the First Circuit has made clear, "a treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and

**Civil No. 13-1827 (SEC)**                                                      **Page 5**

is not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam) (alterations in original; quoting 20 C.F.R. § 404.1527(d)(2)). It also flows from this regulation that an ALJ must give "supportable reasons" for rejecting a treating source's opinion. Soto-Cedeño v. Astrue, 380 F. App'x 1, 4 (1st Cir. 2010) (per curiam); see 20 C.F.R. § 404.1527(d)(2) (providing that an ALJ must give "good reasons" for the weight accorded to a treating source's opinion). "Exactly how much weight the ALJ affords depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, . . . whether the physician supported his or her opinions with sufficient explanations, . . . and whether the physician specializes in the medical conditions at issue . . . ." Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) (citations omitted).

      As to Dr. Mañana-Ferro, Montalvo avers that the ALJ failed to provide "good reasons" for refusing to give her opinion controlling weight. But, as correctly noted by the Commissioner, Docket # 18, p. 9, Montalvo omits explaining what part of the opinion (if any) did the ALJ refuse to credit, as he merely complains that the ALJ jettisoned "the painful physical condition reported by" this treating internist. Docket # 15, p. 14; see also id. at 9. But because this argument—which contains not a single citation to the record—was presented in a wholly perfunctory manner, it is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (reiterating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); see also Figueroa-Perea v. Comm'r of Soc. Sec., 78 F. App'x 134, 135 (1st Cir. 2003) (per curiam) (applying waiver in the social-security context). "Litigants should not seriously expect to obtain a remedy without doing the necessary leg work first." Silverstrand Investments v. AMAG Pharmaceuticals, Inc., 707 F.3d 95, 107 (1st Cir. 2013).

      In all events, and for substantially the same reasons advanced by the Commissioner, Docket # 18, p. 10, the ALJ implicitly gave Dr. Mañana-Ferro's opinion controlling weight, for she incorporated in her decision the (relatively modest) limitations referenced in her notes. See

Tr. 29 (referring to Tr. 269-71, Tr. 284-288). Most notably, for instance, the ALJ limited Montalvo to sedentary work. It appears, to be sure, that the ALJ rejected Dr. Mañana-Ferro's opinion that Montalvo "cannot perform work due to his lumbar problem that radiates to his legs." Tr. 291. But the ALJ's apparent refusal to accept that portion of Dr. Mañana-Ferro's opinion is inexpugnable, for she had no obligation "to accept as gospel" her opinion on the ultimate issue of disability. Stanistreet v. Chater, 21 F.Supp.2d 1129, 1136 (C.D.Cal. 1995), aff'd, 106 F.3d 409 (9th Cir. 1997). And it is beyond dispute that this legal determination is reserved to the Commissioner. See 20 C.F.R. § 416.927(e)(1)); accord Falcon-Cartagena v. Commr of Soc. Sec., 21 F. App'x 11, 12 (1st Cir. 2001) (per curiam); Salazar v. Barnhart, 172 F. App'x 787, 789 (10th Cir. 2006) (per curiam). That ends this aspect of the matter.

Without citing to the record, Montalvo next faults the ALJ for allegedly not explaining why she rejected some of Dr. Acosta's findings regarding his psychological conditions. Docket # 15, p. 14. But most (if not all) of these imputations are frivolous. Montalvo says, for instance, that the ALJ ignored his "limitations in his ability to pay attention and concentration," id. at 14, but the ALJ did consider his "diminished attention," Tr. 29, and therefore limited Montalvo to "unskilled work that is simple, routine and repetitive with occasional contact with coworkers and the public on less than occasional basis." Tr. 27 (bold omitted). The plaintiff similarly criticizes the ALJ for ignoring Dr. Acosta's findings that he cannot "complete a normal workday, . . . perform at a consistent pace and accept instructions and criticism from supervisors," Docket # 15, p. 14, but Dr. Acosta never found such limitations. Tr. 338-48. These imputations are therefore beyond the pale, and come perilously close to violating Federal Rule of Civil Procedure 11; see Fed. R. Civ. P. 11(b)(3) (providing that counsel must ensure that "the factual contentions have evidentiary support").

Beyond that, the ALJ made clear that she "relied on [Dr. Acosta's] clinical signs . . . but found [that] [Dr. Acosta's] 'poor' prognosis did not establish other limitations than the ones" she credited in her decision. Tr. 29. And although the ALJ's decision could have been more

**Civil No. 13-1827 (SEC)** **Page 7**

thorough—by better explaining the "good reasons" for not giving controlling weight to that part of Dr. Acosta's opinion—the Court "assume[s] that the Commissioner is invoking the exception for situations where it is clear what the agency's decision must be." Polanco-Quiñones, 477 Fed.Appx. at 746 (citing MaineGeneral Med. Ctr. v. Shalala, 205 F.3d 493, 501 (1st Cir. 2000)). Here, it is clear what the agency's decision must be. For one thing, the ALJ permissibly found that Montalvo had moderate daily living restrictions, noting that some of his claims could not be objectively verified, and were supported by weak medical evidence. Tr. 26. The ALJ nevertheless credited Dr. Acosta's finding that Montalvo was irritable, had poor stress tolerance and diminished social interaction, finding that Montalvo had marked difficulties in social functioning. Tr. 27. For another, Dr. Acosta herself noted that Montalvo had "average intelligence, adequate remote memory, no hallucinations," Tr. 338-48, so the ALJ permissibly found that Montalvo had moderate difficulties "with regard to concentration, persistence or pace." Tr. 26. Indeed, the ALJ made clear that "at the hearing the claimant was lucid, coherent, and responded appropriately to questions." Id. Because the ALJ considered all of Dr. Acosta's supportable findings, and because she permissibly rejected those parts which were "inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2), Montalvo's technical argument fails.

In all events, any error of law on this front would be harmless. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000). For the reasons just given, the ALJ implicitly marshaled sufficient reasons for not giving Dr. Acosta's opinion controlling weight. "The ALJ thus "met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 472 (6th Cir. 2006) (per curiam) (citation and internal quotation marks omitted). A remand would therefore constitute a futile exercise.

**Civil No. 13-1827 (SEC)**                                                                 Page 8

*The VE's Hypotheticals*

Having established that the ALJ committed no error in assessing Montalvo's RFC, the Court turns to whether the ALJ erred at step five by, as Montalvo maintains, posing a deficient hypothetical question to the VE regarding Montalvo's current employment prospects.

At step five of the disability analysis, the claimant need not produce any evidence. Seavey v. Barnhart, 276 F.3d 1, 10 n. 9 (1st Cir. 2001). Instead, "the Commissioner bears some type of burden to come forward with evidence showing that there are jobs that the applicant can perform despite his limitations." Id. And an ALJ can make this determination by obtaining the testimony of a VE about the claimant's vocational capacity. E.g., Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).

As noted, Montalvo's argument depends on his first (rejected) contention—namely, that the ALJ improperly calculated his RFC. Docket # 15, p. 2. This second argument fares no better. The short of it is that the ALJ introduced qualifications and limitations into the hypothetical scenarios presented to the VE, see Tr. 65-68, and, more important, the ALJ included the "relevant facts." See Padilla v. Barnhart, 186 Fed.Appx. 19, 21-22 (1st Cir. 2006) (per curiam). The record makes manifest that the ALJ "clearly conveyed the parameters of the claimant's restrictions," Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 274 (1st Cir. 1988) (per curiam): She asked the VE to assume an individual with Montalvo's age, education, and past relevant work experience, who could perform "sedentary work . . . with the ability to do unskilled work that is simple, routine and repetitive . . . with less than occasional contact with coworkers and the public." Tr. 66-67. So Montalvo's real disagreement is with the ALJ's decision to fully credit neither his description of his symptoms' severity nor some aspects of his treating doctor's opinions. But, as just explained, the ALJ was entitled to reject the limitations mentioned in those sources, because they were "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see Ramos v. Barnhart, 60 Fed.Appx. 334, 336 (1st Cir. 2003) (per curiam).

**Civil No. 13-1827 (SEC)** **Page 9**

In sum, the hypotheticals posed by the ALJ—which were in accord with the RFC finding and were never questioned by Montalvo's attorney—"ha[ve] substantial support in the record, and, in response to . . . [these] hypothetical[s], the VE listed jobs that claimant could perform." González-Rodríguez v. Barnhart, 111 F. App'x 23, 25 (1st Cir. 2004) (per curiam). Because the ALJ included all limitations that she found credible and supported by substantial evidence in determining the VE's hypothetical, the ALJ properly relied on vocational evidence at step five of the evaluation process to find Montalvo capable of performing sedentary work, requiring unskilled work that is simple, routine and repetitive with less than occasional social contact, that exists in significant numbers in the national economy.

**Conclusion**

For the reasons stated, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, this 20th day of February, 2015.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge